UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

WILLIAM DICKERSON,
          Plaintiff,

vs.                        NO. 05-CV-2181

OFFICER DAVID PHILLIPS,
OFFICER BRIAN CORNETT and
VILLAGE OF TILTON,
          Defendants.

**OPINION**

      Before the court are the Defendants' summary judgment motion [37], the Plaintiff's response [40] and the Defendants' reply [51]. Defendants, pursuant to Federal Rule of Civil Procedure 56 move the court to enter summary judgment in favor of the Defendants and against the Plaintiff. The Plaintiff is William Dickerson. The Defendants are Officer David Phillips, Officer Brian Cornett and the Village of Tilton.

**Standard**

      Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56(c); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)*; Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.,* 956 F.2d 1436, 1440 (7th Cir. 1992). Further, this burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). Credibility questions "defeat summary judgment only '[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility.'" *Outlaw*, 259 F.3d at 838, *citing* Advisory Committee Notes, 1963 Amendment to Fed. R. Civ. P. 56(e)(other citations omitted).

      Fed. Rule Civ. Pro. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Disputed facts are material only if they might affect the outcome of the suit. *First Ind. Bank v. Baker,* 957 F.2d 506, 507-08 (7th Cir. 1992). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, *247-248, 106 S.Ct. 2505, 2510 (1986).

## Background

The Plaintiff claims in his complaint that the officer Defendants without justification assaulted and struck the Plaintiff during a traffic arrest. The Complaint alleges the Village of Tilton is responsible under the theory of respondeat superior for failing to train the officers properly. The arrest occurred in the early morning hours of Sunday, August 17, 2003. The Plaintiff had left the parking lot of a bar and headed north on Illinois Route 1 going through Tilton, Illinois. The Plaintiff lost control of his vehicle, left the roadway and crashed. The Plaintiff's car had been seen traveling on Route 1 by Officer David Phillips who pursued the Plaintiff. Phillipps was assisted by fellow officer, Brian Cornett. The airbag in Plaintiff's vehicle deployed in the crash. The Plaintiff claims he was not injured by the collision, but at least one of the other occupants of the car sustained minor injuries. Officer Phillips removed the Plaintiff from the vehicle, handcuffed him, and told him to sit on the ground by the side of the road. After a few minutes the Plaintiff got up. The Plaintiff claims that Phillips and Cornett assaulted the plaintiff. The Plaintiff claims the officers struck him on his head, face and shoulders with a police baton causing severe lacerations to the plaintiff's face and head and knocking him unconscious. The Plaintiff claims the officers caused a two-inch laceration to his face and injured his right eye causing a detached retina/optic nerve that required surgeries. The Plaintiff was removed from the accident scene three hours later and taken to a local emergency medical center for treatment on the facial lacerations, contusions and other related injuries.

## Undisputed Material Facts[1]

1. The Plaintiff is currently an inmate at the federal correctional institution in Atwater, California. (Pl. Dep. p. 7)
2. On the early morning of the Sunday that this incident occurred he and his friend, "Scooby" Hardimon, arrived at the GT Nightclub at approximately 2:30 a.m.. (Pl. Dep. p. 17 - 18) Scooby was less than 21 years of age at the relevant time, so the Plaintiff and Scooby sat in the parking lot and never entered the GT Nightclub. (Pl. Dep. p. 18)
3. The GT Nightclub is located in Belgium, Illinois, which is south of Danville, Illinois, and

---

[1] Plaintiff's deposition can be found at Docket [39]. As the court struck Plaintiff's Exhibit 1-7 and 12, statements of facts that were supported by these exhibits are not considered. Further, the Court has not listed immaterial facts.

south of Tilton, Illinois. (Pl. Dep. p. 19)
4. Officer Brian Cornett showed up at the GT Nightclub dressed in Tilton Police Department attire. (Pl. Dep. p. 19-20) The plaintiff observed Officer Cornett staring and looking at and inside the plaintiff's vehicle. (Pl. Dep. p. 20)
5. When a fight ensued inside of the GT Nightclub, the "partygoers" began to disperse from the inside of the club and came out into the parking lot. (Pl. Dep. p. 21)
6. The Plaintiff left the nightclub in his car with Scooby Hardimon and another friend, Bobby Ray Keys, who had asked for a ride. (Pl. Dep. p. 21) Bobby sat in the back seat and Scooby sat in the front passenger seat. (Pl. Dep. p. 21-22)
7. The Plaintiff and his passengers were heading to Danville, Illinois, to drop Bobby Ray Keys off. (Pl. Dep. p. 22)
8. The Plaintiff was driving north on Illinois Route 1. (Pl. Dep. p. 25)
9. The Plaintiff while traveling north on Route 1 noticed Officer Cornett pull out of the GT Nightclub parking lot with his light flashing. (Pl. Dep. p. 26-27) The plaintiff saw some flashing lights from a police car far behind him. (Pl. Dep. p. 26) He did not think the police car was after him. (Pl. Dep. p. 26)
10. He passed Officer David Phillips in another police car that was in a parking lot. (Pl. Dep. p. 28)
11. The Plaintiff then tried to enter the entrance ramp to Interstate 74 and planned to head east on Interstate 74. (Pl. Dep. pgs. 28-29)
12. While driving on the entrance ramp to Interstate 74 the Plaintiff's car left the road, hit an embankment and crashed. (Pl. Dep. pgs. 29-30) The brakes on the plaintiff's car were not good as it needed brakes and was scheduled to go to the Toyota dealership for repairs. (Pl. Dep. p. 30)
13. The Plaintiff's driver's side air bag deployed and hit him in the face. (Pl. Dep. p. 31) Although he was unconscious for a period of time, the Plaintiff sustained no injuries from the accident. (Pl. Dep. pgs. 32-33)
14. Bobby Ray Keys flew from the back seat to the front seat and had a cut in the middle of his head and was bleeding. (Pl. Dep. pgs. 31-32)
15. When the Plaintiff woke up Officer Phillips was already at the car and told him to put his hands up. (Pl. Dep. pgs. 33-34)
16. Officer Phillips handcuffed the Plaintiff behind his back and had him sit on the curb. (Pl. Dep. p. 34) Phillips never told the Plaintiff he was under arrest. (Pl. Dep. p. 38)
17. By the time the Plaintiff had regained consciousness after the wreck Scooby had disappeared. (Pl. Dep. p. 35)
18. The accident occurred around 3:00 in the morning on Sunday. (Pl. Dep. pgs. 35-36)
19. While Plaintiff was sitting handcuffed on the curb, Officer Cornett came to the scene also. (Pl. Dep. p. 36) Officer Cornett was ranting and raving. (Pl. Dep. p. 36)
20. The Plaintiff told the officers he did not know where Scooby was. (Pl. Dep. p. 37) The Plaintiff told Officers Phillips and Cornett that a guy [Scooby] might have been thrown from the vehicle. (Pl. Dep. p. 36)
21. The Plaintiff had been handcuffed by Officer Phillips and told to sit on the ground. (Pl. Dep. pgs. 37-38)
22. The Plaintiff got up and headed south, but not far. (Pl. Dep. pgs. 37-39.)
23. The Plaintiff claims that Officer Cornett hit him on the head with a nightstick, knocking

the Plaintiff unconscious. (Pl. Dep. p. 39) The Plaintiff does not know whether Cornett struck him more than once because he was unconscious. (Pl. Dep. p. 39)

24. The Plaintiff was then taken back to his car and was sitting on the ground. (Pl. Dep. p. 41)
25. When the Plaintiff regained consciousness, after being knocked unconscious by Officer Cornett, he was still in handcuffs and bleeding from a laceration above his right eye. (Pl. Dep. p. 41)
26. Terry Evans [a bystander]spoke directly to Officers Phillips and Cornett regarding their "unlawful use of excessive force" against the Plaintiff. (Pl. Dep. p. 43)
27. At some point the Defendants called an ambulance.
28. On August 18, 2003, the Plaintiff was released from custody on bond and on that same day, the Plaintiff's aunt, Debra Coleman took photographs of the Plaintiff and his injuries. (Pl. Dep. pgs. 54-57)
29. On August 19, 2003, the Plaintiff was escorted to the Carle Clinic Association by his sister, Shamieka Dickerson for further observation of his injuries sustained from the August 18, 2003 incident. (Dep. Pl. p. 57)
30. This incident where the wreck happened and he was arrested and taken to the Public Safety Building in Danville occurred in the early morning of Sunday, August 17, 2003. (Pl. Dep. pgs. 61-62)
31. At the Plaintiff's deposition on a copy of a calendar for the month of August 2003, the Plaintiff circled the date of August 17, 2003 as the date this incident occurred. (Pl. Dep. Ex. 4; Pl. Dep. p. 61)
32. The Plaintiff's Complaint and Petition to Proceed in Forma Pauperis were filed August 18, 2005. (Docket Entry 1, 05-CV-2181)
33. The text order allowing the case to proceed was entered September 25, 2005. (Docket Entry 9/25/05; 05-CV-2181)

**Disputed Material Fact**

1. The Plaintiff had gone to a car that drove up. (Pl. Dep. pgs. 40-41)
2. Officer Phillips claims that he was on his way to an alarm call with his lights flashing when he noticed the Plaintiff going more than 100 miles an hour weaving in and out of traffic. (Pl. Dep. pgs. 25-26) However, the Plaintiff claims he was driving 60 maybe 70 miles per hour and possibly faster. (Pl. Dep. pgs. 25-26)
3. The Plaintiff had been handcuffed by Officer Cornett and told to sit on the ground. (Pl. Dep. pgs. 37-38)
4. The Defendants claims the Plaintiff had gone to a car that drove up and he knew the fellow who was driving the car. (Pl. Dep. pgs. 40-41) However, the Plaintiff claims Officers Phillips and Cornett failed to react to the Plaintiff telling them that his friend Scooby might have been thrown from the vehicle, so at this point the Plaintiff got up and headed south on foot, not far, to where the wreck started, and was yelling and searching for Scooby Hardimon. (Pl. Dep. pgs. 37-38)
5. While searching for Scooby Hardimon, the plaintiff noticed a vehicle parked on the ramp [and the driver] was observing the accident. (Pl. Dep. p. 40) Defendants claims that the Plaintiff knew the driver. However, the Plaintiff claims that at the time of the incident, the Plaintiff did not know who was in the parked vehicle, but later found out who the driver

was in the parked vehicle. (Pl. Dep. pgs. 40-41)

**Discussion**

Defendants argue that the plaintiff's claim is barred by the two year statute of limitation. The United States Seventh Circuit Court of Appeals has ruled that the Illinois two year statute of limitations for personal injury actions found in Section 13-202 of the Illinois Code of Civil Procedure applies to Section 1983 civil rights actions. *Farrell v. McDonough*, 966 F.2d 279 (7th Cir. 1992), *cert. denied.*, 506 U.S. 1084 (1993); *Garlington v. O'Leary*, 879 F.2d 277 (7th Cir. 1989); *Kalimara v. Illinois Dept. of Corrections*, 879 F.2d 276 (7th Cir. 1989); 735 ILCS Sec. 5/13-202. Section 13-202 provides in part: actions for damages for an injury to the person...shall be commenced within two years next after the cause of action accrued....735 ILCS 5/13-202. The Defendants assert that the complaint in this case alleges that the incident occurred on "August 17-18, 2003, in the early A.M. hours...." Defendants further assert that the evidence, however, is that this incident actually occurred in the early morning hours of August 17, 2003. Defendants assert that it was on August 17, 2003, that the auto accident occurred and the Plaintiff was arrested and taken to the Public Safety Building in Danville, Illinois. Defendants also assert that no part of this incident occurred on August 18, 2003, and that the two year statute of limitations expired August 17, 2005 and that day was a Wednesday and was not a holiday. Defendants argue that using August 18, 2005 as the filing date, the complaint was filed one day late and one day after the statute of limitations had expired. Defendants argue that consequently the filing was untimely and the case should be dismissed. However, this court adopts the rationale found in *Houston v. Lack*. Pro se prisoners' notices of appeal are "filed" at the moment of delivery to prison authorities for forwarding to the district court. *See Houston v. Lack*, 487 U.S. 266, 267 (1988). The main rationale behind the "mailbox rule" of *Houston v. Lack* and cases extending it is "pro se prisoners have no control over delays between the prison authorities' receipt of the notice [of appeal] and its filing, and their lack of freedom bars them from delivering the notice to the court clerk personally." *Id.* at 273-74. The plaintiff, who was incarcerated at the time, signed his complaint on August 15, 2005. As the plaintiff's complaint was received by the clerk of the court on August 18, 2005, the court reasonably assumes the plaintiff presented his complaint to prison authorities, somewhere between August 15, 2005 and August 17, 2005 for mailing and therefore he is in compliance with the mailbox rule. Plaintiff's claim is not barred by the two year statute of limitation.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain." *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Excessive force is force applied "maliciously and sadistically to cause harm," as opposed to force applied "in a good-faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 5. Relevant factors include the need for force, the relationship between that need and the force applied, the threat reasonably perceived by the officers, the efforts made to temper the severity of the force employed, and the extent of the prisoner's injury. *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000), *citing Hudson*, 503 U.S. at 7. Whether an arresting officer used excessive force is determined by assessing the need for force in light of all the surrounding circumstances. *See Graham v. Connor*, 490 U.S. 386, 396-97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir.2003). Events leading up to the use of force are necessarily

relevant because the actions of the police are to be judged from the perspective of a reasonable officer at the scene.  *Graham*, 490 U.S. at 396; *see, e.g., Abdullahi v. City of Madison*, 423 F.3d 763, 764-65, 768 (7th Cir.2005); *Smith v. Ball State Univ*., 295 F.3d 763, 766-67, 770-71 (7th Cir.2002).  Relevant facts include (1) the severity of the suspected crime, (2) whether the suspect posed an immediate threat to officer safety, and (3) whether the suspect was actively resisting arrest.  *Graham*, 490 U.S. at 397; Payne, 337 F.3d at 778.

"During the course of an arrest or other "seizure" of a free citizen, the force used to detain the individual must be reasonable in a Fourth Amendment context. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Lawrence v. Kenosha County,* 391 F.3d 837, 843 (7th Cir. 2004).  [The determination of reasonableness] involves "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citations and quotation marks omitted).  Not surprisingly, this analysis is "not capable of precise definition or mechanical application" but "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, . . ."

The Seventh Circuit set forth the applicable standards for excessive force cases as follows:

> Excessive force claims relating to an arrest or other seizure must be analyzed under the Fourth Amendment's objective reasonableness standard.  We ask 'whether the officer's actions are 'objectively reasonable 'in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation.'  Factors relevant to this inquiry include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is attempting to evade arrest by flight.  We must allow for 'the fact that police officers are often forced to make split-second judgments –in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Jones v. Webb*, 45 F.3d 178, 183 (7th Cir. 1995) (citations omitted).

The Court must evaluate the officers'"use of force not with the benefit of hindsight, but rather as it appeared to the officer at the time of the encounter."  *Smith v. Ball State Univ.*, 295 F.3d 763, 770-771 (7th Cir. 2002) (finding that officers who forcibly removed a potentially intoxicated driver from his car were entitled to summary judgment).

The court notes that in determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.,* 956 F.2d 1436, 1440 (7th Cir. 1992).  First, Officer Phillips claims that he was on his way to an alarm call with his lights flashing when he noticed the Plaintiff going over 100 miles an hour weaving in and out of traffic. However, the plaintiff says he was traveling about 60 - 70 miles per hour, maybe faster.  While the Defendants claims the Plaintiff had gone to a car that drove up and he

knew the fellow who was driving the car, the Plaintiff claims he did not realize who the driver was at the time of the incident, but learned later that he did know the driver. The plaintiff denies that he walked up to that car. At this stage, the court must take the plaintiff's version of the facts as true.

Dickerson went to the GT nightclub with his friend, Scooby Hardimon. They sat in the parking lot and never entered the GT Nightclub. Officer Brian Cornett showed up at the GT Nightclub. The plaintiff observed Officer Cornett staring and looking at and inside the plaintiff's vehicle. When a fight ensued inside of the GT Nightclub, the "partygoers" began to disperse from the inside of the club and came out into the parking lot. The Plaintiff left the nightclub in his car with Scooby Hardimon and another friend, Bobby Ray Keys, who had asked for a ride. Bobby sat in the back seat and Scooby sat in the front passenger seat. The Plaintiff and his passengers were heading to Danville, Illinois, to drop Bobby Ray Keys off. The Plaintiff, while traveling north on Illinois Route 1 noticed Officer Cornett pull out of the GT Nightclub parking lot with his light flashing. The plaintiff saw the flashing lights from a police car far behind him, but he did not think the police car was after him. He passed Officer David Phillips in another police car that was in a parking lot. The Plaintiff claims he was driving 60 maybe 70 miles per hour and possibly faster. The Plaintiff then tried to enter the entrance ramp to Interstate 74 and planned to head east on Interstate 74. While driving on the entrance ramp to Interstate 74 the Plaintiff's car left the road, hit an embankment and crashed. The brakes on the plaintiff's car were not good as it needed brakes. The accident occurred around 3:00 in the morning on Sunday, August 17, 2008. The Plaintiff's driver's side air bag deployed and hit him in the face. Although he was unconscious for a period of time, the Plaintiff sustained no injuries from the accident. Bobby Ray Keys flew from the back seat to the front seat and had a cut in the middle of his head and was bleeding. When the Plaintiff woke up Officer Phillips was already at the car and told him to put his hands up. Officer Phillips handcuffed the Plaintiff behind his back and had him sit on the curb. Phillips never told the Plaintiff he was under arrest.

By the time the Plaintiff had regained consciousness after the wreck Scooby Hardimon had disappeared. While Plaintiff was sitting handcuffed on the curb, Officer Cornett came to the scene also. Officer Cornett was ranting and raving. The Plaintiff told the officers he did not know where Scooby Hardimon was. The Plaintiff told Officers Phillips and Cornett that Scooby might have been thrown from the vehicle. Officers Phillips and Cornett failed to react to the Plaintiff telling them that his friend Scooby might have been thrown from the vehicle. So at this point the Plaintiff got up and headed south on foot, not far, to where the wreck started[2] (see Pl. Dep. pgs. 37-39) and he was yelling and searching for Scooby Hardimon. While searching for Scooby Hardimon, the plaintiff noticed a vehicle parked on the ramp. The [driver] was observing the accident. The Plaintiff did not know who was in the parked vehicle, but later found out who the driver was in the parked vehicle. Officer Cornett hit him on the head with a nightstick, knocking the Plaintiff unconscious. The Plaintiff does not know whether Cornett struck him more than once because he was unconscious. Although the Plaintiff does not list it as a material fact, the court

---

[2]The court notes that this plaintiff proceeds pro se. Therefore the court considers material facts found in the plaintiff's deposition, but not listed.

7

notes that in his deposition, he stated his body told him he had been hit [by the officer(s)] more than once. The Plaintiff was then taken back to his car and was sitting on the ground. When the Plaintiff regained consciousness, after being knocked unconscious by Officer Cornett, he was still in handcuffs and bleeding from a laceration above his right eye. Terry Evans [a bystander] spoke directly to Officers Phillips and Cornett regarding their "unlawful use of excessive force" against the Plaintiff. At some point the Defendants called an ambulance. On August 18, 2003, the Plaintiff was released from custody on a bond and on that same day, the Plaintiff's aunt, Debra Coleman took photographs of the Plaintiff and his injuries.
On August 19, 2003, the Plaintiff was escorted to the Carle Clinic Association by his sister, Shamieka Dickerson for further observation of his injuries sustained from the August 17, 2003 incident.

In their summary judgment motion, the Defendants argue that after having been removed from the wrecked automobile and handcuffed, the Plaintiff was told by the officers to sit on the curb and that despite this the Plaintiff admits that he got up and attempted to leave the scene. It appears that the defendants wants this court to believe that Officer Cornett struck the Plaintiff in the head with a nightstick, knocking him unconscious either because the Plaintiff got up and headed south on foot or the Plaintiff had gone to a car that drove up. The Plaintiff disputes that he had gone to a car that drove up. Based upon the Plaintiff's version of the facts, he was obviously distressed because after the collision, his passenger and friend, Scooby had disappeared, and the police did not react to that news. Although the plaintiff had walked a short distance from the car, according to him, he was looking for his friend, yelling and looking for his friend. Taking the plaintiff's point of view, which the court must at this stage, it would have been apparent to the officers at the scene that the plaintiff was stressed and was looking for his friend, rather than trying to leave the scene. If the plaintiff's version of the facts are true, a trier of the facts could find that the force used on the Plaintiff by the officers was not reasonable force. Based on the facts presented, the court cannot state that the amount of force that the officers used in arresting the Plaintiff was reasonable under the circumstances. Nor can this court state that the officers' use of force did not rise to the level of what is required to prove a civil rights violation.

In addition to the two Tilton police officers sued in this case, the Plaintiff has also filed suit against the Village of Tilton. The Complaint states that this is based on "respondeat superior" and failure to train. Complaint para. 17. It has long been the law that there is no cause of action for respondeat superior liability against a municipal corporation under Section 1983. *Monell v. New York Dept. of Social Services*, 436 U.S. 658 (1978). Before liability under Section 1983 would apply to a municipality, it must be demonstrated that "a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by a municipality was the cause of the alleged constitutional violation by one of the municipality's employees. *Monell*, 436 U.S. at 690. In *Baxter v. Vigo County School Corp*., 26 F.2d 728 (7th Cir. 1994) the Seventh Circuit Court of Appeals said that 1983 municipal liability has to be shown by a law, regulation or ordinance reduced to writing that results in a constitutional violation, or through a widespread practice so well settled to constitute customary usage for the force of law, or whether the constitutional violation was caused by the action of a person with final policy making authority. *Baxter*, 26 F.3d at 734-35. In the instant case there is absolutely no evidence of any of these being shown against the Village of Tilton. In his response, the Plaintiff argues that the

Village of Tilton failed to properly train Officers Cornett and Phillips.  The Plaintiff also argues that the Village of Tilton, at least until the year 1987 "personally adopted, promugulated and regulated a customary usage of 'allowing employees to be trained on the job by other members of the police force without having to first undergo any formal or information training,' such as permitting their officers in 1987 to undergo basic law enforcement courses, continued education classes...."  Plaintiff provides arguments, but has not provided any facts or supporting documentation to show that the Village of Tilton has a policy of failing to properly train their police officers.  Therefore, pursuant to Fed. R. Civ. Pro. Rule 56(c), summary judgment must be allowed on the Plaintiff's claims against the Village of Tilton.

**It is therefore ordered:**

1. **Based on the foregoing, the Defendants' summary judgment is granted in part and denied in part [37].**
2. **Pursuant to Fed. R. Civ. Pro. Rule 56(c), the Defendants, Village of Tilton is grant summary judgment.  The clerk of the court is directed to enter judgment for the Village of Tilton and against the Plaintiff at the close of this case.**
3. **The Defendants, Officer Cornett and Phillips are denied summary judgment.  The Plaintiff may proceed to a jury trial against Cornett and Phillips.**
4. **A status conference, via telephone, is scheduled for April 10, 2008 at 3:00 p.m.  The clerk of the court will initiate the conference call.  The clerk of the court is directed to issue a writ for the Plaintiff's appearance at the April 10, 2008 status conference.**

**Enter this 27th day of March 2008.**

_____
**Michael P. McCuskey**
**Chief United States District Judge**